IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>JODI HOSKINS,<br><br><br>Defendant. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br><br><br><br>Case No. 2:08-CR-277<br>Judge Dee Benson |

This matter was tried to the court on January 11 through 13, 2010. The defendant Jodi

Hoskins was present and represented by Shawn R. Perez, of the Law Offices of Shawn R. Perez,

Las Vegas, Nevada. The United States was represented by Special Assistant United States

Attorneys Monica B. Edelstein and Magaret Leigh Kessler of the United States Department of

Justice, Tax Division.

The court heard the testimony of both fact and expert witnesses, received into evidence

numerous exhibits, and heard the arguments of counsel for the parties. Having considered all of

the evidence presented, the court makes the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

1.  Companions, also known as D&P Enterprises, is an adult entertainment agency or call-out escort service doing business in Salt Lake City, Utah since approximately 2000.

2.  During the time frame relevant to this case, Companions' office was located at 1341 South State Street, Salt Lake City, Utah.

3.  Companions is a Schedule C business. As such, the business does not file its own income tax returns. Instead, all income and deductions for Companions are reported on Schedule C of the owner's individual income tax return, Form 1040.

4.  Companions was owned by Roy Hoskins. For the tax years 2000, 2001, 2002, and 2003, Companions' income and deductions were reported on Schedule C of Roy Hoskins' individual income tax return.

5.  The defendant Jodi Hoskins, also known as Jodi Mattinson, married Roy Hoskins in Hawaii on April 2, 2003. They were not married during tax year 2002.

6.  Roy and Jodi Hoskins purchased a home located at 2689 South Vespa Drive, West Valley, Utah, in both of their names in the fall of 2000. Roy Hoskins moved into the residence in 2000 and Jodi Hoskins moved into the residence in December of 2000 or January 2001. Roy and Jodi Hoskins both resided at this residence through at least 2004.

7.  Jodi Hoskins was actively involved in the management and operation of Companions from its inception in 2000 and was aware of all financial matters associated with Companions. Jodi Hoskins held herself out as an owner of Companions along with Roy

Hoskins.

8.     Jodi Hoskins was the office manager and primary phone girl at Companions beginning in at least January 2001.

9.     On the Financial Disclosure Form filed in conjunction with her divorce in Nevada, Jodi Hoskins subscribed under penalty of perjury that she has been self employed from 2001 through the present and listed D&P Enterprises as her business.

10.    Roy and Jodi Hoskins filed a married filing jointly U.S. Individual Income Tax Return for tax year 2002 on or about April 14, 2003, despite the fact that they did not marry until 2003. Both Roy and Jodi Hoskins signed the 2002 Individual Income Tax Return. The Hoskins' 2002 Income Tax Return was filed with and received by the Internal Revenue Service.

11.    Companions employed a number of escorts during the relevant time period. The escorts were the entertainers who responded to client calls for dates. Companions and the escorts divided the hourly agency fee amount charged to clients. Companions did not receive a portion of any tip paid to the escort. During the relevant time period, escorts who worked for Companions included Danielle Ensign-Thomas, Kirstan Bagley, and Allison Plant.

12.    Companions also employed phone girls. The phone girls coordinated dates on behalf of Companions. Companions' phone girls recorded the amount of money collected by Companions on daily transaction sheets that tracked the amount of cash or credit card fees owed to Companions. The daily sheets, cash, and credit card receipts were collected

and totaled on a daily basis and maintained in a company envelope. Companions' phone girls were paid based on the number of dates they booked. Additionally, phone girls generally received 20% of tips earned by escorts for booking the call. These tips were paid in cash to the phone girls by the escorts, not by Companions. During the relevant time period, phone girls who worked for Companions included April Miller and Jodi Hoskins.

13. Companions' clients generally paid for services with cash or by credit card.

14. When escorts collected cash on a date, the cash was immediately divided that day between the escort and Companions. When the date was paid for with a credit card, the escort was paid her share of the credit card charge at a later date known as credit card payday.

15. Companions maintained credit card receipt books that listed the amount owed to each escort for their credit card dates. Only Roy and Jodi Hoskins filled out the credit card receipt book that was used to keep an accounting of amounts owed to escorts in 2002. In order to fill out the credit card receipt book accurately, it was necessary to review the daily transaction sheets, the credit card slips, and the complete daily envelope with the credit card batch in order to determine what portion of each credit card payment was owed to the escort. Roy Hoskins was primarily responsible for making payment to the escorts on credit card payday in either cash or check.

16. Jodi Hoskins made notations in the credit card receipt book to communicate information to Roy Hoskins, who was primarily responsible for making payment, including notations

related to when some portion of the amount should be paid to a phone girls as a tip or notations regarding when a fine amount should be withheld from the credit card payment because an escort had violated an office rule.

17. Companions' escorts such as Danielle Ensign-Thomas and Kirstan Bagley believed that credit card payments made up 50% of all payments to Companions and cash payments made up the other 50%. Most employees viewed Companions as a cash intensive business. April Miller, who served as a main phone girl, estimated that 70% of Companions' dates were paid for with cash.

18. Companions maintained a business account at Wells Fargo Bank. The business bank account was opened under the name Roy Hoskins d/b/a Companions/D&P Enterprises. The business account application was signed on or about August 17, 2000. Only Roy and Jodi Hoskins had signatory authority over this account. Jodi Hoskins signed the signature card for the account as the manager of the business using her maiden name Jodi Mattinson. The business bank account was a merchant account and received deposits for credit card payments to Companions. The merchant account was billed under the name D&P Enterprises.

19. During the year 2002, deposits into the Companions' business account consisted almost entirely of merchant account deposits. No cash deposits were made to the Companions' business account in 2002.

20. Based on the bank deposits analysis and considering only the credit card deposits to be income deposits to Companions, Internal Revenue Service Revenue Agent Steve Roberts

determined that the gross receipts for Companions were underreported by a total of $150,802 on the 2002 Individual Income Tax Return. The resulting tax due and owing is $52,645.

21. When Revenue Agent Steve Roberts conservatively estimated that 50% of Companions' receipts were cash, he determined that gross receipts for Companions were underreported by a total of $1,204,354 on the 2002 Individual Income Tax Return. The resulting tax due and owing is $485,443.

22. In or about 2000, Jodi Hoskins contacted accountant Rick Florez to inquire whether he would be available to perform tax work on behalf of Companions. Shortly thereafter, Rick Florez met with Jodi and Roy Hoskins at the Companions office to discuss the work Florez would perform. Jodi Hoskins answered all of Florez' questions regarding the business and its operation during that meeting.

23. Rick Florez was retained to prepare the individual income tax returns for Roy and Jodi Hoskins for tax years 2000 through at least 2003. Rick Florez prepared separate individual returns for Roy Hoskins and Jodi Mattinson for 2000 and 2001. Rick Florez stated that for all years between 2001 and 2004, the information needed to complete the Schedule C associated with Companions was obtained from both Roy and Jodi Hoskins. When Roy Hoskins was physically present in Florez' office, Roy Hoskins would call and consult with Jodi Hoskins to provide the necessary information to Florez.

24. In 2003, Roy and Jodi Hoskins retained Rick Florez to prepare a married filing joint U.S. Individual Income Tax Return for tax year 2002. Income and expenses from

Companions were reported on the Schedule C attached to their 2002 joint return. The income reported on the return did not include any tips Jodi Hoskins earned as a phone girl at Companions nor did she report any salary from Companions as income. Both Roy and Jodi Hoskins signed the 2002 Income Tax Return. Rick Florez prepared the return based on information he obtained from both Roy and Jodi Hoskins. Rick Florez did not review any books or records from Companions and instead gathered all the information imputed on the return from either Roy or Jodi Hoskins.

25. Rick Florez was retained in 2003 to provide payroll services for Companions that included issuing Forms 1099 to escorts, Forms W-2 to phone girls, and preparing employment tax returns. Rick Florez received the 2003 credit card receipt books from Companions in order to prepare Forms 1099 for escorts. Rick Florez received all additional information necessary to prepare payroll forms from Jodi Hoskins, including employees' names and social security numbers.

26. Jodi Hoskins worked at Companions as a phone girl everyday in 2001 and often worked as a phone girl in 2002, primarily between June and December 2002. Jodi Hoskins received tips while working as a phone girl at Companions. Jodi Hoskins never, however, received a paycheck during 2001 and 2002.

27. Companions' escorts and phone girls understood Jodi Hoskins to be an owner of Companions despite the fact that the business was licensed in Roy Hoskins' name.

28. Jodi Hoskins was primarily responsible for hiring and firing phone girls and escorts at Companions. Jodi Hoskins hired April Miller to act as Companions' primary phone girl

7

while Jodi Hoskins was out of the office on maternity leave during the early part of 2002.

29.    Jodi Hoskins informed prospective new escorts and phone girls of the business licensing requirements and provided them with the paperwork necessary to obtain a sexually oriented business license.

30.    Jodi Hoskins trained new phone girls on how to use the credit card machine, how frequently to batch out the credit card charges, and how to fill out the daily transaction sheets.

31.     It was understood by the phone girls and escorts that Jodi Hoskins created the daily transaction sheet system.

32.    Companions had a number of office rules.  It was understood by the phone girls and escorts that the office rules were ultimately enforced by Jodi Hoskins.  Escorts and phone girls were frequently fined for violating office rules.  It was understood by the phone girls and escorts that the fines were imposed by Jodi Hoskins.

33.    It was understood by the phone girls and escorts that they ultimately answered to Jodi Hoskins as their boss.  Phone girls were required to call or text message Jodi Hoskins to inform her how many dates were booked and the amount of money collected during the prior night when Jodi Hoskins was absent from the office.

34.    Jodi Hoskins was responsible for all of Companions' advertising, including putting together the advertisements and purchasing advertising space.  When advertising tasks were delegated to other phone girls including April Miller, Jodi Hoskins retained final approval authority over the advertisement and would reimburse any out of pocket costs

April Miller expended.

35. Jodi Hoskins signed a number of checks on the Companions Wells Fargo business bank account in the name of D&P Enterprises in 2002, including payroll checks to phone girls, checks for Companions' advertising expenses, checks to pay for escort licensing fees, and checks to pay for apparently personal items such as Jodi Hoskins' dental veneers.

36. Jodi Hoskins testified that she reviewed documents, including daily transaction sheets, in order to prepare payroll. The daily transaction sheets and other business documentation was maintained in the file cabinet at her residence.

37. Jodi Hoskins frequently told escorts and phone girls to report their income and tips on their income tax returns.

38. On March 4, 2004, during a search warrant executed at the Hoskins residence, Internal Revenue Service Special Agent Scott Johnson spoke with Jodi Hoskins. After Special Agent Johnson explained what records the Internal Revenue Service was seeking, Jodi Hoskins directed agents to the Companions' business records in the upstairs office.

39. All of the business financial records sought pursuant to the search warrant, including the daily transaction sheets and 2002 credit card receipt books, were recovered from the Hoskins' residence and not from the Companions business office.

40. Jodi Hoskins contacted Special Agent Scott Johnson by phone and asked to review the documents seized during the search warrant so that the Hoskins could prepare their 2003 income tax return. Jodi Hoskins specifically told Special Agent Johnson that they needed to review the 2003 daily sheets for Companions.

41.     Jodi Hoskins made statements to Special Agent Johnson while reviewing Companions'

        business records.  Jodi Hoskins stated that she knew that a law enforcement agency was

        coming after Companions and that she told Roy Hoskins that they should have destroyed

        the records.  Jodi Hoskins stated that they had not filed 1099s despite being told they

        were required to do so because they did not believe it was a big deal.  Finally, Jodi

        Hoskins stated that if the Internal Revenue Service determined that tax was owed, the

        Hoskins had the money to pay the outstanding amounts.

42.     Jodi Hoskins lived a lavish lifestyle in 2002.  Jodi Hoskins frequently had cash on her

        person.  Jodi Hoskins directed Companions' employees to buy money orders with cash

        she provided in order to pay her personal bills.   Companions employees saw cash at Roy

        and Jodi Hoskins' residence.  Internal Revenue Service Agents executing the search

        warrant at the Hoskins' residence noted that there was cash in the house.

43.     Despite working as a phone girl for Companions in 2001 through at least 2004, Jodi

        Hoskins did not report the tips she earned as income on her Individual Income Tax

        Returns.

44.     Jodi Hoskins continued to file married filing joint Income Tax Returns with Roy Hoskins

        for tax years 2003 through 2008.

## CONCLUSIONS OF LAW

Based upon the foregoing Findings of Fact, the court makes the following Conclusions of Law.

1.      Title 26, United States Code, Section 7201 (Tax Evasion) requires the government to prove each of the following elements beyond a reasonable doubt: (a) a substantial income tax deficiency due and owing; (b) the defendant intended to evade and defeat payment of that additional tax; (c) the defendant committed, in any manner, some affirmative act to mislead or conceal that the tax was due and owing; and (d) the defendant willfully attempted to evade and defeat the tax. Sansone v. United States, 380 U.S. 343, 351 (1968); Tenth Circuit Pattern Jury Instructions 2.92 (revised).

2.      The United States has proven, beyond a reasonable doubt, that there was a substantial tax due and owing for the year 2002, specifically $485,443.

3.      The United States has proven, beyond a reasonable doubt, that Jodi Hoskins intended to evade and defeat the payment of the additional tax due and owing by Roy Hoskins with regard to the jointly filed 2002 Individual Income Tax Return.

4.      The United States has proven, beyond a reasonable doubt, that Jodi Hoskins committed an affirmative act of evasion. The defendant falsely subscribed to the married filing jointly U.S. Individual Income Tax Return Form 1040 for tax year 2002, which was false in that it substantially underreported the gross receipts of Companions on Schedule C. That return was filed with the IRS.

5.    The United States has proven, beyond a reasonable doubt, that Jodi Hoskins falsely

      signed and subscribed the return willfully, with the specific intent to violate the law.

6.    Accordingly, the court finds the defendant, Jodi Hoskins, guilty of one count of tax

      evasion in violation of 26 U.S.C. §7201 related to the 2002 Individual Income Tax

      Return she filed jointly with Roy Hoskins.


Dated this 16th day of March, 2010.

_____
Dee Benson
United States District Judge